## Hargis v. Hargis et al.

May 16, 1941.

A. H. Hargis for appellant.

Williams & Allen and James Park for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, Joanna E. Hargis, recovered a judgment in the Fayette circuit court against the appellant and defendant below, A. H. Hargis, whereby she was granted an absolute divorce, and by agreement she was adjudged alimony in the sum of $250 per month. Only about $600 was paid her by her divorced husband in satisfaction of her allowed alimony, and from time to time she filed separate actions against him in the Fayette circuit court to reduce to judgment the accumulated and unpaid amounts. Some three or four of such actions were successively filed, none of which was defended, and judgments went in her favor in each of them. Executions issued on them which were sent to the sheriff of Breathitt county, where defendant resided and where his property, if he possessed any, was supposed to be located. He had outwardly owned, prior thereto, some real estate consisting of four lots upon which buildings had been erected in the city of Jackson, and, perhaps, also some parcels located outside of that city; and on one of the four of such parcels (being a lot located in the city) there was erected a costly business house in which a bank institution known as the "Hargis Bank" conducted its business, whilst another was defendant's costly residence. The record as made out and brought here is not clear as to whether any of the executions referred to was actually levied by the

74

sheriff of Breathitt county on any of the property to which we have alluded, but it is clear that at least some of them were not levied but were endorsed by the sheriff "no property found," and so returned to the clerk of the Fayette circuit court. In each instance, as the return was made, following the recovery of the respective judgments, the plaintiff therein, and herein, filed lis pendens notices with the county court clerk of Breathitt county setting out the facts whereby constructive notice was given in order to protect her thereby acquired rights. It was then known, or thereafter discovered, that other claims against the property by other creditors of appellant were being litigated in actions pending in the Breathitt circuit court and which were finally determined in the consolidated case of W. T. Congleton Company v. Hargis, and which was affirmed by us in the case of Hargis v. W. T. Congleton Company, 252 Ky. 192, 66 S. W. (2d) 98, in which opinion legal questions as well as the facts litigated are stated.

In the same volume of the Kentucky Reports on page 198 under the style of Hargis v. Hargis we affirmed the judgment of divorce referred to, including the alimony allowance to plaintiff. The determinations of issues in those two cases, both factual and legal, thereby became adjudicated as between the parties to those actions and rendered them no longer available in subsequent litigation between the same parties. But notwithstanding, appellant, who practiced this case for himself, seeks to rely on many of such issues determined in the cases referred to.

With matters in the situation described Mrs. Joanna E. Hargis, who was not a party to the first action referred to, filed this equitable discovery action in the Fayette circuit court against her divorced husband, his brother, Elbert Hargis, one G. G. Maloney, and Commercial Securities Service Company, located in Lexington, Kentucky, pursuant to the provisions of Section 439 of our Civil Code of Practice, and a part of the provisions of Section 210 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, seeking to discover and reach property of her husband in satisfaction of her various alimony judgments supra. In her petition she set out in detail the facts hereinbefore related and obtained an attachment directed to the sheriff of Breathitt county who levied it on the four pieces of real property involved

in this action. But because of the claimed rights of others to subject the property in satisfaction of their demands no sale was had under the levy of the attachment. Lis pendens notices were likewise filed with the county court clerk of Breathitt county of the levy of such attachments. The original petition herein averred, inter alia, that a mortgage had been executed by A. H. Hargis to the defendant Commercial Securities Service Company; that the property had been fraudulently conveyed by defendant (plaintiff's husband) to his brother, Elbert Hargis, and that Maloney claimed some interest or rights in and to the attached property, but each and all of which plaintiff averred was bogus and that A. H. Hargis was the actual owner of the property levied on as holder of either the legal or the equitable title thereto. The defendant, Commercial Securities Service Company, never answered to the merits; and it was developed during the litigation and admitted by all parties that the alleged mortgage to it evidenced only a unilateral effort on the part of A. H. Hargis to cover up his property and put it beyond the reach of his divorced wife so as to prevent her from collecting her alimony judgment rendered against him, and that no such alleged mortgage, although one was actually executed by A. H. Hargis, was ever delivered to that Company, nor did it ever advance him one penny.

The answer and cross petition of Maloney disclosed that he had executed sale bonds for the property sold under the Congleton Company judgment at which A. H. Hargis was the purchaser, notwithstanding he had previously conveyed the property to his brother, Elbert Hargis, and that it was then agreed that when the purchase price was satisfied by A. H. Hargis he was to become the owner of the property. That agreement was later reduced to writing and executed by A. H. Hargis and Maloney. Elbert Hargis' pretended title to the land vanished under the judgment rendered in the Congleton Company case and it developed in this case that he never possessed a sustainable title as against creditors of his vendor. After being summoned in Breathitt county in this action A. H. Hargis and Elbert Hargis entered motion to quash the summons as well as the return thereon upon various alleged grounds, one of which was that none of the land sought to be reached by the action through the processes to which we have referred, was located in Fayette county where the judgments in favor

of plaintiff and which this action sought to enforce, were rendered. Later on special and general demurrers were filed to plaintiff's petition, which pleading she amended from time to time, but none of such dilatory motions were acted on up to the time when defendant Hargis filed in the cause what he designated as a ''Plea in Bar,'' to the effect that since the rendition of the alimony judgment in favor of his wife he had procured a discharge in bankruptcy through a proceeding filed for that purpose instituted in the Federal District Court for the Eastern District of Kentucky, and that he was thereby relieved from obligation to pay either his wife's alimony judgment, or any of the other claims of the different litigants referred to. One of the latter was that of W. T. Congleton and Company for street improvements in front of the properties whilst others were for taxes due the city of Jackson and the Board of Education of the same city and still others not necessary to mention.

A few days after the filing of this action in the Fayette circuit court the then Banking Commissioner of the State filed an action in the Breathitt circuit court seeking to subject the same property here involved, and which was based on a judgment that he had obtained against A. H. Hargis prior to that time. After the filing of that action, and before final judgment rendered therein, the judge of the Fayette circuit court ordered the action of the Banking Commissioner, then pending in the Breathitt circuit court, transferred to the Fayette circuit court and consolidated with this action. In the meantime Maloney filed his defense to this action in the Fayette circuit court, in which he set out the facts to which we have referred, and asked that the balance of the sale price for which he had executed his bonds be first paid before any of the proceeds of any sale that might be made in this case was allotted to any other creditor, and which the court so adjudged in rendering the final judgment appealed from. Elbert Hargis passed out of the case in the manner we have indicated and he has retired from the scene. After Mrs. Hargis obtained her first judgment in the Fayette circuit court for accumulated and unpaid alimony (to which reference has been made) appellant, A. H. Hargis filed an original action in this court against the judge of the Fayette circuit court, Hon. King Swope, seeking a mandatory injunction, as he claimed, against respondent therein, to compel him to sustain the plea of discharge

in bankruptcy, which appellant had interposed in this action. We denied the relief prayed for in that petition in an opinion reported in Hargis v. Swope, 272 Ky. 257, 114 S. W. (2d) 75. But plaintiff did not then terminate his battle, but continued his fight and later filed a similar original action in this court against the then judge of the Breathitt circuit court to require him to recognize and enforce the alleged bankruptcy discharge in his court which plaintiff had interposed as a defense to the enforcement of debts set out by petitioner therein in his petition filed in this court. We denied the relief sought by that petition in the case of Hargis v. Howard, Judge et al., reported in the same Kentucky volume on page 263, 114 S. W. (2d) 78.

The final judgment herein, and the one appealed from was rendered on January 8, 1938. In it the court sustained plaintiff's right to subject the attached parcels of real estate located in Breathitt county to the satisfaction of her alimony judgments. Priorities as between plaintiff and other creditors of defendant were determined and the judgment directed the property to be sold by the court's master commissioner, which he did, and later reported his sale to the court which was confirmed. However, before the sale was made appellant filed an action in the Federal District Court for the Eastern District of Kentucky, presided over by Hon. H. Church Ford, seeking a mandatory injunction from that court against Judge Swope and other enforcement officers of the judgment of the Fayette circuit court as directed by the judgment of January 8, 1938, which, we repeat, is the one from which this appeal is prosecuted, on the ground that defendant had been discharged from all of the claims adjudged against him, and which in effect was an effort to compel Judge Swope to sustain defendant's plea of his discharge in bankruptcy. All the parties herein were made parties to that action. The case was heard by Judge Ford and he dismissed the petition and disallowed the relief sought, upon the ground that A. H. Hargis, the plaintiff herein, had never procured a discharge in bankruptcy. The opinion of Judge Ford is reported in the case of Hargis v. Swope, Judge, D. C., 25 F. Supp. 166, and in which a chronological history of the bankruptcy proceedings is set forth. It, therefore, appears that at least the tenacity of the appellant cannot be questioned. We also see, and which clearly appears from the opinions referred to, that the only

question in this case is whether or not the Fayette circuit court had jurisdiction under the facts and in the circumstances to adjudge the sale of the land in Breathitt county in satisfaction of plaintiff's claim, and that of the others brought into the action through the various pleadings and cross petitions filed, and by the order of removal and consolidation of the action filed by the Banking Commissioner.

Nevertheless appellant, who himself briefed this case in this court on his own behalf, ignores the opinion of Judge Ford in the case of Hargis v. Swope, Judge et al., supra, and strenuously insists upon his interposed plea in bar, based exclusively upon his alleged discharge in bankruptcy and which, of course, is in the face of Judge Ford's opinion determining that he possessed no such discharge, because of the facts set out therein, and the further one that even if he had a valid discharge it would not cancel or affect his obligation to pay plaintiff's alimony judgment, since such a claim is not bankruptable, as Judge Ford also points out. We, therefore, return to the only remaining question involved in the case, i. e., the jurisdiction of the Fayette circuit court to order the sale of the attached property.

It is contended otherwise by defendant and in support thereof reliance is had on Subdivision 3 of Section 62 of the Civil Code of Practice. The first part of that section says: "Actions must be brought in the county in which the subject of the action, or some part thereof, is situated. * * * 3. For the sale of real property under title 10, chapter 14, or under a mortgage lien, or other encumbrance or charge, except for debts of a decedent." It is strenuously argued that the subsection localizes actions for the sale of land in all circumstances and in all states of fact, and that all judgments for the sale of land, not lying within the jurisdiction of the court ordering it, are invalid and void, and a number of cases from this court are cited to sustain that contention, chiefly among which is the case of Williams v. Davenport, 181 Ky. 496, 205 S. W. 551. Other cases, rendered prior to the rendition of that opinion are cited in it and which are also relied on by defendant in his brief. In the Davenport opinion no reference whatever was made to Section 210 of our Statutes supra, but the case was treated exclusively as one brought solely under Section 439 of the Civil Code of Practice. The judg-

ment creditor in that case sought to set aside fraudulent conveyances as against persons who had taken possession of the property under them and who were not only claiming to be the title holders, but who were likewise in possession under their alleged titles and claiming to own the property. We held therein that such an action came within the purview of Section 62 of the Civil Code of Practice (an attack on title) and should be brought in the county where the land was located. Others of the cases referred to are all of a similar nature, while still others are based upon facts clearly differentiating them from those appearing in this case. Whether or not we were correct in our interpretations made and enforced in the Davenport case need not be determined herein, since the facts upon which the judgment in each case was rested were entirely different. In that (Davenport) case there was a clear contest over the title to the land sought to be subjected; whilst in this one all questions of title adverse to that of the defendant, Hargis, were eliminated either by adjudications made in the cited cases supra, or by the express admissions made in this case by the alleged adverse owners whereby the fog surrounding appellant's interest in the property, and by which he had sought to veil his interest became dissipated as this action progressed, and by which defendant's ownership of the property became indisputably apparent. That revelation was and is the "discovery" sought in this action from the beginning. The processes (evidence and other steps taken in this cause) by which the concealment of the property by defendant was and is attempted displays an abundance of intriguing action on his part to defeat not only the collection of his wife's alimony judgment, but likewise all of his other debts.

After the bogus nature of the claims to the property which appellant had attempted to create in his efforts to conceal it from the processes of the court in subjecting it to the payment of his debts were so admitted or indisputably established plaintiff amended her petition and withdrew from it all attacks of conveyances or incumbrances attempted to be made by defendant, and sought to sell the attached property which the evidence revealed as belonging exclusively to appellant, the defendant, in the executions and in the levied attachment. That amendment reduced the question involved to the sole one of whether or not an equity court may enforce its judgment by subjecting real estate in another county to

its satisfaction in a nulla bona proceeding brought under the provisions of Section 439 of the Civil Code of Practice, or Section 210 of our Statutes and wherein no attack of any prior conveyance of the property is involved.

It will be noted that in the Davenport case there was involved such an attack and because thereof the conclusion therein was announced. However, in the case of Hatton v. Rogers, 134 Ky. 840, 121 S. W. 698, 699, an opinion written by Judge Carroll, and which is not referred to in the Davenport opinion, Subsection 3 of Section 62 of the Civil Code was interpreted as not embracing the enforcement of a lien created by the levy of an attachment, and especially so when employed in an action on a return of nulla bona to discover property of the defendant in the execution. In so construing the subdivision the opinion said: "The words 'lien, or other incumbrance or charge,' in this subdivision [3 of Section 62 of the Civil Code of Practice], do not embrace a lien created by an attachment in an action like this, but refer to liens, incumbrances, or charges created by contract or the judgment of a court."

The case of Wilson v. Gibbs, 213 Ky. 268, 280 S. W. 1109, involved the same question and was the same character of proceeding as is the instant action; but the question arose in a different way. Its determination was necessary in order to solve the dispute between the litigants in that case, and we held that the levy of an attachment on land located in another county than the one rendering the judgment in an action on a return of nulla bona gave the court rendering the judgment and issuing the attachment jurisdiction to subject the attached land by ordering its sale, although it was located in another county and no part of which was in the jurisdiction of the court rendering the judgment. A reading of the opinion inferentially discloses that the husband who owed the debt there involved had conveyed his land situated in an adjoining county to his wife, and upon the service of the attachment on the land a lis pendens notice was filed. Later the wife filed an action to have the levy of the attachment discharged on the ground that the court rendering the judgment and from whence the attachment issued did not obtain thereby jurisdiction to enforce its sale, and which is the same contention now urged by appellant. In our opinion, rendered therein, we declined to sustain the wife's contention on the

ground that the court possessed the undisputed jurisdiction under the provisions of Section 439 of the Civil Code of Practice and the latter part of Section 210 of our Statutes supra.

Following that opinion Chief Justice Clay, writing for the court in the case of Noe v. Brock, 263 Ky. 37, 91 S. W. (2d) 546, 547, which was a nulla bona action filed in the Laurel circuit court and in which an attachment had issued and was levied on a tract of land in Harlan county, sustained the same interpretation of the sections of the statute and Code supra, relating to the venue of such an action. In that case we held that the venue was not governed by Section 62 of the Civil Code of Practice or any of its subdivisions. The Hatton case, supra, was referred to in that opinion, as well as the early case of Nixon v. Jack, 16 B. Mon. 174, in which latter case it was held that the then Section 93 of the Civil Code of Practice (corresponding to our present Section 62) ''did not include an attachment lien obtained during the pendency of the action.'' See, also, Daniels v. Gillum, 203 Ky. 262, 262 S. W. 272, and Crawford v. Crawford, 286 Ky. 105, 149 S. W. (2d) 778, decided March 7, 1941.

We have not elaborated on the facts of the various opinions referred to which was purposely done to save time and space the information which would thereby be given being available to the reader through consultation of those opinions. It is made to appear that the declared law at the present time by this court is to the effect that an action brought on a return of nulla bona, pursuant to the provisions of Section 439 of the Civil Code of Practice, and any other authorizing statutory provisions may be brought in the court rendering the judgment, and in which the sale of real estate may be ordered in satisfaction of the judgment, although it may be located in a different county; provided the property has been seized so as to bring it in custodia legis by any legal process through which it may be done. Hence we conclude that the trial court did not err in sustaining its jurisdiction and the venue of the action and in overruling any and all objections thereto.

In his brief filed in this court appellant strongly insists that the judgment was erroneous for the additional reason that the court did not adjudge him home-

stead rights in the property sold, to which he argues that he is entitled. He is unmarried and has been without a family since he and his wife separated so far as the record discloses, but if it should be conceded that he is in a position to claim a homesteader's interest in the property, then we are confronted with the fact that nowhere throughout the pending of the action did he assert or attempt to assert any such rights either by a pleading or in any other manner. It is true that he made some such claim to the master commissioner after the judgment was rendered, but he never made any effort in court to present or have determined his alleged homestead rights in and to the property or its proceeds. Therefore, this alleged error cannot be considered on this appeal.

A number of other collateral questions are discussed in briefs as well as in practically every pleading filed by appellant, since in filing them he attached thereto a lengthy argument in support of the relief sought in each paper he filed, and which was repeated time after time whenever he had leisure sufficient to write them out and file them. Neither have we noticed many of the contradictory positions assumed by appellant, both in his brief and in the steps taken by him during the progress of the cause in the trial court. Also, we have not and will not discuss any question growing out of the great delay in filing the record in this court after the rendition of the judgment appealed from. A copy of that judgment was filed in this court before the expiration of the two years for taking an appeal, but the transcript was not filed for quite awhile after the expiration of that period, although it was filed within the time granted by this court on motions therefor by appellant. Whether the court had the right to extend the time for that purpose beyond the two years provided for the taking of an appeal is a question which neither side discusses, and for which reason we have treated the case as though the appeal was regularly and legally prosecuted.

Wherefore, for the reasons stated, the judgment is affirmed.